

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE
50 WALNUT STREET, P.O. BOX 419
NEWARK, NJ 07101-0419
**(973) 645-6340**

**WILLIAM J. MARTINI**
**JUDGE**

## LETTER OPINION

November 15, 2006

Alan C. Milstein
Sherman, Silverstein, Kohl, Rose & Podolsky, PC
Fairway Corporate Center
4300 Haddonfield Road, Suite 311
Pennsauken, NJ 08109
*Attorney for Plaintiff*

John P. O'Toole
Wilson, Elser, Moskowitz, Edelman & Dicker, LLP
33 Washington Street
Newark, NJ 07102
*Attorney for Defendant*

> **Re:   Loper v. Pruco Life Ins. Co.**
> **Civil Action No. 05-CV-2741 (WJM)**

Dear Counsel:

This matter comes before the Court on both Plaintiff's motion for partial summary judgment pursuant to Rule 56 and Defendant's motion for summary judgment seeking to dismiss Plaintiffs' complaint in its entirety. The motions are opposed. Jurisdiction is found under 28 U.S.C. § 1332. The Court adjudicates this matter on the papers. Fed. R. Civ. P. 78. For the reasons stated below, Defendant's motion is **GRANTED** and Plaintiffs' complaint is **DISMISSED** in its entirety.

## BACKGROUND

This is a diversity case in which Plaintiff Loper, a Connecticut citizen is suing Defendant Prudential Insurance Company of America ("Pruco"), a New Jersey citizen, for $650,000 in death benefits under her deceased husband, Michael Loper's ("Mr. Loper"), Pruco life insurance policy. Mr. Loper applied for the $650,000 life insurance policy from Pruco in March 2004 naming Plaintiff as his sole beneficiary. On March 31, 2004 he signed a Limited Insurance Agreement ("LIA") that would cover him for either 60 days, or until he was issued or denied a permanent policy. Mr. Loper paid his initial premium and otherwise

complied with the terms of the policy.  On May 29, 2004, 59 days after he signed the LIA, Mr. Loper committed suicide.  Pruco had issued his policy on May 6, 2005 (the "Policy"), but it had not been delivered at the time of his death.  Plaintiff timely requested death benefits and, on December 6, 2004, Pruco informed her by letter that any benefits would be subject to the LIA.  In a March 1, 2005 letter, Pruco informed Plaintiff that having verified her husband's suicide, under the terms of the LIA, payment was limited to amounts already paid; Pruco had already returned the initial premium and attached a check for $1.54 to cover the remaining interest owed.

Mr. Loper had been treated for many years with anti-depressive medication, and Plaintiff contends that adjustment to his medication may have rendered him insane at the time of his suicide.  Under the terms of the issued Pruco policy, "[i]f the insured, whether sane or insane, dies by suicide within two years from the issue date, this contract will end and we will return the premiums paid.  The contract will provide no further benefit."  (Policy at 6.)  In contrast, the LIA language limits payment to the return of the amount paid "[i]f death is due to suicide or intentionally self-inflicted injury" *without* any reference to "sane or insane."  (LIA at 2.)  However, the LIA further outlines that "[t]he insurance is subject to the terms, limitations and exclusions of the policy you have requested from the Company."  (*Id*.)  Finally , the LIA outlines that limited coverage ends when, among others:

> 1.   We issue a policy as applied for and the application has been signed.
>
> 2.   We deliver a policy other than as applied for.

(LIA at 2).

Plaintiff filed her Complaint on May 25, 2005, alleging that the terms of the LIA, lacking "sane or insane" language, required payment for her husband's suicide while insane from his medication; she seeks $650,000 plus costs.  Following motion practice before Magistrate Judge Hedges, on May 9, 2006, Plaintiff filed her motion for partial summary judgment asking the Court to find as a matter of law that the LIA governed at the time of Mr. Loper's suicide and that insane or involuntary suicide was covered under the LIA.  On May 12, 2006 (amended on May 15, 2006), Defendant moved for summary judgment asking the Court to find as a matter of law that Pruco was not liable to pay death benefits regardless if Mr. Loper's suicide was "sane or insane."

**DISCUSSION**

**I.    Standard for Summary Judgment Pursuant to Rule 56**

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.  *See* Fed. R. Civ. P. 56.  Rule 56(e) requires that when a motion for summary judgment is made, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial.  *See id*.; *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.  Only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment.  *See*

*Anderson*, 477 U.S. at 247-48.  If the evidence is such that a reasonable fact-finder could find in favor of the nonmoving party, summary judgment should not be granted.  *See id.*; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## II.   Defendant's Motion for Summary Judgment is GRANTED

It is clear under New Jersey law that a clause in a life insurance policy excluding payment in the case of a suicide whether "sane or insane" is valid and precludes payment for a suicide whether by a sane or insane insured.  *See, e.g., Johnson v. Metropolitan Life Ins. Co*, 273 F. Supp. 589 (D.N.J. 1967). Plaintiff likewise "concedes that if the Policy is found to apply with its exclusion of suicide 'whether sane or insane,' her cause of action fails."  (Pl. Reply Br. at 2.)

The Court is convinced that the Policy's "sane or insane" language applied and therefore Plaintiff's Complaint must fail.  This conclusion is based on two factors.  Firstly, it appears that Pruco's issuance of the May 6, 2005 Policy supplanted the LIA upon issuance.  Second, even were the LIA to still have been in effect at the time of Mr. Loper's suicide, its suicide clause was subject to the terms of the Policy, and the Policy further defined suicide as either "sane or insane."  Therefore, Pruco was not required to pay benefits to Plaintiff, regardless whether Mr. Loper was sane or insane when he died.

### A.   The Policy Governed at the Time of Mr. Loper's Suicide

Generally, under New Jersey law, when the terms of an insurance contract are ambiguous, a court should interpret the language in favor of the policy-holder.  *See, e.g., GTE Corp. v. Allendale Mut. Ins. Corp.*, 372 F.3d 598, 608-09 (3d Cir. 2004).  However, simple conflict does not mean ambiguity. Ambiguity exists only if "the phrasing of the policy is so confusing that the average policyholder cannot make out the boundaries of coverage." *Pittston Co. Ultramar America Ltd. v. Allianz Ins. Co.*, 124 F.3d 508, 520 (3d Cir. 1997).  When an insurance contract clause is "clear and unambiguous . . . [,][it] must be enforced as written."  *GTE Corp.*, 372 F.3d at 609 (3d Cir. 2004) (citing *Cobra Prods., Inc. v. Fed. Ins. Co.,* 722 A.2d 545, 549 (N.J. App. Div. 1998)).  *Accord Pittston*, 124 F.3d at 520 (3d Cir. 1997).

In this instance, the LIA plainly states that its limited insurance coverage ends when Pruco "issue[s] a policy as applied for and the application has been signed."  (LIA at 2.)  To that end, Pruco issued a policy as applied for on May 6, 2005, and although Mr. Loper had not yet received the policy at the time of his death, he signed the LIA; there is no allegation of an unsigned application.  Therefore, the LIA coverage expired on May 6, 2005 when Pruco issued the Policy; and the Policy, with its "sane or insane" language, governed upon issuance.[1]

---

[1] The Court is aware that, in a December 6, 2004 letter from Pruco Senior Claims Examiner, Carol Hartman, to Plaintiff, Hartman writes "[s]ince your husband died before a policy could be *delivered*, any liability for death benefits will be under the LIA."  (Pruco Hartman 12/6/2004 letter) (emphasis added.)  However, this letter is not part of the insurance LIA or Policy, and the terms of those insurance documents are what this Court has been asked to interpret.

Plaintiff contends that the Policy eventually issued by Pruco was substantially different than the one sought by Mr. Loper. (Pl. Reply Br. at 4-5.)[2]  In support of this contention, Plaintiff argues that the suicide exclusion language in the Policy is more restrictive than that of the LIA. (*Id.* at 4.)  This allegation is dispelled by a simple reading of the complete LIA and its clause incorporating the Policy.  As explained below, the LIA was only a bare outline of the Policy, and it properly referenced the Policy for incorporation of its terms, limitations and exclusions.  To that end, and as the Court outlines below, the LIA itself also excluded coverage for Mr. Loper's suicide.

### B.   The Policy "Sane or Insane" Language Applied During the LIA Period

It is well settled under New Jersey law that a temporary insurance binder such as the LIA is a short and incomplete statement of insurance in which terms and conditions are filled out by referring to the customary anticipated policy issued by the insurer.  *See Miney v. Baum*, 406 A.2d 234, 236 (N.J. Super. Ct. Law Div. 1979); 1A Couch on Ins. § 13:1.  Therefore, "the court is not confined in the construction of the contract to the actual wording of the binding receipt."  *Miney*, 406 A.2d at 236.

Moreover, the LIA here specifically directs Plaintiff that "the insurance is subject to the *terms, limitations and exclusions* of the policy you have requested from the Company." (LIA at 2) (emphasis added.)  The language of the rider excludes "suicide" without outlining the parameters of that exclusion. (LIA at 2.)  However, looking to the terms, limitations and exclusions of the policy requested and issued by Pruco on May 6, 2004, the exclusion is further defined to mean a suicide by the insured "whether sane or insane." (Policy at 6.)  It is, therefore, unambiguously clear that, regardless if it were the LIA or the Policy in effect at the time of his death, Mr. Loper's suicide would be excluded, "sane or insane."  *See Pittston*, 124 F.3d at 520.

**CONCLUSION**

In summary, the Court finds that the Pruco policy issued May 6, 2005, and containing a "sane or insane" suicide clause, supplanted the LIA on issuance.  Furthermore, even if the Policy did not replace the LIA, the LIA specifically incorporated the "sane or insane" Policy language.  Therefore, Plaintiff's motion for partial summary judgment must be **DENIED**, Defendant's motion for summary judgment must be **GRANTED**, and the Complaint will be **DISMISSED** in its entirety.

An appropriate Order accompanies this Letter Opinion.


s/ William J. Martini
**William J. Martini, U.S.D.J.**


cc:   The Hon. Ronald J. Hedges, U.S.M.J.

---

[2]  The Court notes that Plaintiff initially admitted that "Pruco had not delivered a different policy."  (Pl. Br. at 4.)